SNELL, Appellant v. WATTS et al., Respondents

(95 N.W.2d 453)

(File No. 9724. Opinion filed March 19, 1959).

**Chas. E. Gorsuch, Mike Ronayne,** Aberdeen, for Plaintiff and Appellant.

**Elmer Thurow,** Aberdeen, **Lloyd Peterson,** Watertown, for Defendant and Respondent M. Peterson Watts.

SMITH, J. In this action Gertrude Snell, as plaintiff, seeks to recover damages from the defendants Emerson Watts and M. Peterson Watts, copartners, doing business as the Thermal Service & Construction Company, for breach of a contract whereby defendants agreed to remodel plaintiff's Onida, South Dakota, home. Defendant Emerson Watts was not served with process and did not appear in the action. The answer of M. Peterson Watts specifically denied the partnership and the use of the name Thermal Service & Construction Company and generally denied all of the allegations of the complaint. At the close of plaintiff's case in chief the trial court directed a verdict for defendant M. Peterson Watts. Plaintiff has appealed.

In the interest of clarity we develop the facts which the evidence received or offered tend to establish as it relates (a) to the parties, (b) to the transactions between plaintiff and Emerson Watts and (c) to the alleged partnership between Emerson Watts and M. Peterson Watts.

(a) The plaintiff, Gertrude Snell, lives at Onida, and the defendants, Emerson Watts and M. Peterson Watts, live at Aberdeen, in South Dakota. The defendants are husband and wife. Emerson Watts is also known as George Watts. We will refer to him as Watts and to her as Mrs. Watts. The Thermal Service & Construction Company will be designated as Thermal.

(b) On July 21, 1956, Watts called on plaintiff at Onida. As a result of his visit an oral agreement for the construction of a car port at plaintiff's home in Onida was reached. In partial payment for that improvement plaintiff delivered to Watts her check for $271.12 dated July 21, 1956, and payable to Thermal. On July 24, 1956, Watts returned to Onida and on that day he and plaintiff executed a memorandum of agreement providing Thermal would complete described improvements and repairs to her home for a consideration of $4,217.50. In the course of this transaction plaintiff delivered to Watts her check dated July 24, 1956, for $1,500 payable to Thermal as a down payment. Thereafter differences arose because the work was not undertaken as agreed. On September 14, 1956, plaintiff, Watts and their respective lawyers met and negotiated a formal agreement which

named "George Watts" as party of the first part and plaintiff as party of the second part. In this agreement the materials to be furnished and the improvements and repairs to be made were described more in detail. It recited, "Whereas, the parties have entered into certain memoranda agreements and are desirous of defining more specifically the terms of the agreements * * *." On September 24, 1956, by a check payable to George Watts an additional $1,500 payment was made under the terms of the contract. Thereafter the work was discontinued and never finished, and plaintiff paid others $1,992.84 to repair the damages done to her home by Watts.

(c) The letterhead of Thermal used in writing a letter to plaintiff bore its name, its address as No. 7 Ninth Ave. S. W., Aberdeen, South Dakota, the names of "Emerson Watts, Gen. Mgr." and "M. Peterson Watts, Secty. & Treas." and the statement "Modernize. We can save you money on your home improvements."

During the early days of July 1956 a salesman of the Rusco Window Company of Moorhead, Minnesota, called on Watts and Mrs. Watts at their Aberdeen home at No. 7 Ninth Ave. S. W., and proposed that Thermal become the company's local agent. During that conference the salesman pointed out that Watts' credit was not good and they would have to look to Mrs. Watts for the financial backing in the arrangement. Mrs. Watts then stated in Watts' presence that she "would see that all accounts were taken care of and that everything would be handled properly and that it was a partnership" and thereupon, in her presence, Watts said, "The wife and I are partners. She is taking care of the business angle of it and I am taking care of the sales angle of it."

On July 2, 1956, Mrs. Watts opened an account in the Aberdeen National Bank in the name of Thermal. A signature card, containing a joint account agreement, was executed which included the following words "Authorized signatures of Thermal Service & Const. Co." and the signatures of Emerson A. Watts and Mrs. Emerson A. Watts.

Thereafter the above described checks of plaintiff payable to Thermal in the amounts of $271.12 and $1,500, and

her check for $1,500 above described payable to George Watts were deposited in the account of Thermal in the Aberdeen National Bank.

On November 21, 1956, Thermal also opened an account in the Farmers & Merchants Bank at Aberdeen and authorized signatures. Appearing on the bank's signature card are Emerson A. Watts and Margaret E. Watts.

Mrs. Watts was at Onida with Watts and said to plaintiff "We are sorry we are late in getting out, we had other jobs to look after and we came just as soon as we could."

Plaintiff testified that Mrs. Watts paid two men who lived at Onida $44 each for work they did on her home in October.

In directing a verdict for the defendant, Mrs. Watts, the trial court expressed the view that plaintiff had failed to make out a prima facie case for two reasons, viz. (1) her evidence and offers of proof were insufficient to support a finding by the jury of the existence of a partnership between Watts and Mrs. Watts, and (2) all that was done or agreed prior to September 14, 1956, was merged in and superseded by the formal agreement of that date which conclusively established plaintiff intended to deal with George Watts as an individual and hence she is without claim against Mrs. Watts.

■ These are the reasons advanced by counsel for Mrs. Watts in support of the ruling of the trial court. In disposing of these contentions, we view the evidence in the light most favorable to plaintiff, the party against whom the verdict was directed, and decide whether there is any substantial evidence which would have supported a verdict in her favor. Hansen v. Isaak, 70 S.D. 529, 19 N.W.2d 521.

■■ The sufficiency of plaintiff's showing, as prima facie evidence of the existence of the alleged partnership, seems not to be open to serious question. We are not unmindful of the holdings which declare strong evidence is required to prove a business partnership between a husband and wife. Rowley, Modern Law of Partnership, § 901, p. 1258. Because it is not uncommon for a wife to busy herself in the affairs of her husband, much of the evidence we have

detailed with reference to the conduct of Mrs. Watts would have little weight were it not for the fact that it must be viewed in the light of the testimony that these two defendants declared to the salesman for the Rusco Window Company that they were business partners. No decision has come to our attention which holds that, in an action by a third person, such an admission by the alleged partners in the presence of each other, is insufficient to present a jury question as to the existence of the partnership. The text of 68 C.J.S. Partnership § 57, p. 481, reading "A finding of the existence of a partnership may be supported by evidence of the direct admissions of the parties * * *" is supported by the cited cases. And see 40 Am.Jur., Partnership, § 84, p. 187. We are of the opinion that the trial court erred in ruling plaintiff's evidence of the existence of the partnership to be insufficient.

█ We turn to a consideration of the effect of the September 14, 1956, agreement between plaintiff and Watts upon the alleged liability of Mrs. Watts. Assuming that the triers of the fact had found Watts and Mrs. Watts to be business partners, in our opinion, to hold or concede that all which had transpired between plaintiff and either Watts or Thermal was merged in and superseded by the September 14th agreement would not necessarily be of controlling significance in determining whether Mrs. Watts was liable. Assuming a finding that Watts and Mrs. Watts were actually partners, the evidence of plaintiff, viewed as a whole, including the very significant fact that all payments made by plaintiff to Watts or Thermal, including what was paid under the September 14th contract were deposited by him in the Aberdeen National Bank in the account of Thermal, is sufficient, we think, to constitute a prima facie showing that Watts was acting for the partnership in making and performing that contract. Which is to say we think it is sufficient to make out a prima facie case against Mrs. Watts.

The law of agency is a part of the law of partnership. SDC 49.0104. All liabilities which would accrue to an agent from transactions within the scope of his actual or ostensible authority if they had been entered into on his own account, accrue to the principal. SDC 3.0301.

540

It has been written, "In case the partnership occupies the position of an undisclosed principal the other party has the right to proceed against either the agent or agaisnt the firm as principal. All of this comes about by reason of the dependency of the law of partnership upon that of agency * * *." Rowley, Modern Law of Partnership, § 486. To the same effect see 68 C.J.S. Partnership § 177, p. 629.

■ We quote the following with approval from Lindley on Partnership, 8th Ed., p. 221. "If, therefore, one partner only enters into a written contract, the question whether the contract is confined to him, or whether it extends to him and his co-partners, cannot be determined simply by the terms of the contract. For supposing a contract to be entered into by one partner in his own name only, still if in fact he was acting as the agent of the firm, his co-partners will be in the position of undisclosed principals; and they may therefore be liable to be sued on the contract, although no allusion is made to them in it."

From all of the foregoing it follows we are of the opinion that the offered and received evidence would have supported a verdict for plaintiff, and therefore the court erred in treating the issue as of law and in directing a verdict against plaintiff.

The judgment of the trial court is reversed.

All the Judges concur.