David B. WIDDOSS and Jean Widdoss, Plaintiffs and Appellants,

v.

Patrick L. DONAHUE, John R. Donahue and Donahue Realty, Defendants and Appellees.

No. 13783.

Supreme Court of South Dakota.

Argued Jan. 18, 1983.

Decided April 6, 1983.

Thomas E. Brady of Richards, Hood & Brady, P.C., Spearfish, for plaintiffs and appellants.

Ronald W. Banks and Ann C. Jones of Banks & Johnson, Rapid City, for defendants and appellees.

FOSHEIM, Chief Justice.

Plaintiffs executed an exclusive listing agreement for the sale of their ranch with Defendant Patrick L. Donahue in which plaintiffs agreed to pay him a $39,000 commission if a purchaser was found or a sale was made. Patrick Donahue found a purchaser, Howard Franz, to whom plaintiffs sold the ranch by contract for deed dated March 18, 1977. Plaintiffs brought this action to recover the $39,000 they paid Patrick Donahue. The trial court entered judgment against plaintiffs and awarded defendants their expenses for taking a deposition. Plaintiffs appeal. We affirm.

Plaintiffs claim the exclusive listing agreement was breached. They argue that because Mr. Franz did not promptly make the May 1st and November 1st payments he proved himself to be less than an able buyer. Plaintiffs cite *Larson v. Syverson,* 84 S.D. 31, 166 N.W.2d 424, 426 (1969), which states:

> A broker effecting a sale of property can recover a commission only by virtue of the contract with his principal, either express or implied. Thus, when he is employed to find a purchaser, the broker earns his commission and becomes entitled thereto when he produces a purchaser who is ready, able, and willing to purchase at a price and upon the terms specified by the principal or satisfactory to him. (citations omitted)

The contract for deed signed by plaintiffs and Mr. Franz contained a default clause which provided, in part, that, "[u]pon default, Sellers shall give Buyers notice in writing of the default and Buyer shall have 30 days within which to remedy said default by paying the principal and interest then due and owing."

The trial court found that Mr. Franz did not pay the May 1, 1977, or the November 1, 1977, contract payments when due and payable but also found that plaintiffs' attorney mailed Mr. Franz a notice of default for the May 1st payment on May 3, 1977, and for the November 1st payment on November 2, 1977, and that Mr. Franz cured these defaults with accepted pay-

ments within the default grace period. After accepting the November 1, 1977, payment, plaintiffs agreed to Mr. Franz's assignment of the contract for deed to a third party. The trial court concluded that Patrick Donahue did not breach the listing agreement and that plaintiffs received precisely what they bargained for. We agree. Mr. Franz made the contract payments within the stipulated time. They were accepted by plaintiffs. If Mr. Franz performed according to the contract he could be no less than an able buyer. Patrick Donahue accordingly earned his commission under the exclusive listing agreement.

As an alternative theory, plaintiffs contend they are entitled to recover the commission because Donahue Realty was not licensed as a real estate partnership or association. Plaintiffs base this argument on SDCL 36–21–14, –21.4,[1] and *Schmidt v. Earl*, 83 S.D. 245, 158 N.W.2d 184 (1968). The facts in the companion cases of *Schmidt* and *Dunhill of Fargo, Inc. v. Lahman Manufacturing Co., Inc.*, 317 N.W.2d 824 (S.D.1982), are distinguishable. *Schmidt* held that a real estate broker who is not licensed under SDCL ch. 36–21 cannot collect a commission. In *Dunhill* we held that an employment agency's failure to procure a license under SDCL ch. 60–6A likewise precluded it from collecting a commission.

■ The trial court found that Patrick Donahue was a licensed real estate broker doing business as Donahue Realty and that John Donahue, his father, was also a licensed real estate broker doing business as Donahue Realty. The trial court found that while Patrick and John Donahue used the same trust account and the same business checking account, they had no partnership agreement, did not share profits, did not intend to be partners, and did not hold

themselves out as partners to third parties. The trial court also found they did not file a partnership tax return, nor individually contribute capital to a partnership venture. The court further found there was no evidence of joint management, administration or control of the business. Based on these facts, the trial court concluded that Patrick and John Donahue were not partners. Partnership is a question of fact. *Weidner v. Lineback*, 82 S.D. 8, 140 N.W.2d 597 (1966); *Munce v. Munce*, 77 S.D. 594, 96 N.W.2d 661 (1959). Our review of the evidence draws the conclusion that the trial court's findings on the existence of a partnership are not clearly erroneous. *In Re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970); SDCL 15–6–52(a).

■ This does not end the inquiry, however, because plaintiffs also argue that even if the finding of no partnership is not clearly error, Donahue Realty is an "association" within the meaning of SDCL 36–21–14 and –21.4 and therefore must be licensed and that the lack of this license entitles plaintiffs to recover the commission. We agree with the trial court that regardless of whether Donahue Realty is an association within the meaning of those statutes, plaintiffs are not entitled to recover the commission. The trial court cited Annot., 74 A.L.R.3d 637, to support its position.

In the absence of a statute providing for recovery, the cases generally hold that one who has paid money to an unlicensed person in consideration of the performance of a contract by such person is not entitled to recover back the money so paid on the ground that . . . equity and the principles of restitution do not require that the money be paid back.

In this latter connection recovery is denied on the ground that the compensation was a voluntary payment, that any

---

1. SDCL 36–21–14: It is a Class 2 misdemeanor for any . . . copartnership, [or] association . . . to act as a real estate broker . . . without a license issued by the real estate commission, and no . . . copartnership, [or] association . . . shall be entitled to collect any . . . commission . . . without having first complied with the provisions of this chapter.

SDCL 36–21–21.4: No partnership, [or] association . . . shall perform the services of a real estate broker . . . until such time as the partnership, [or] association . . . shall be granted a license by the commission.

misapprehension in the payment constituted a mistake of law by which the payor is bound, and that there is no equitable reason for making restitution to a plaintiff who gets the exchange which he expected. (footnotes omitted)

*Id.* at 642–644. *See also* 12 C.J.S. *Brokers* § 190. Unlike *Schmidt* and *Dunhill, supra,* this is not an action by an unlicensed broker or agency to collect a commission. Plaintiffs voluntarily paid Patrick Donahue for finding them an able buyer who purchased their property. Since Patrick Donahue fully performed under the contract, there is no equitable reason for ordering restitution to plaintiffs who got the exchange they expected.

■ Plaintiffs next challenge the trial court's finding that defendants did not fraudulently induce plaintiffs to execute the contract for deed. Based on detailed findings, the trial court concluded that there was no fraud and that "the contract was negotiated between [plaintiffs] and Franz. Both parties were represented by counsel. Today everything [plaintiffs] bargained for is being performed." Our review of the record does not leave us with a firm and definite conviction that the trial court erred in finding no fraud. *In Re Estate of Hobelsberger, supra;* SDCL 15–6–52(a); SDCL 53–4–5.

The final issue is whether the trial court properly granted defendants' motion for terms, pursuant to SDCL 15–6–37(a)(2).[2] Defendants' motion reads:

> Counsel for the Defendants in the above-captioned matter moves the Court for an Order compelling Plaintiffs to pay terms for the cost of taking the deposition of John Shepard twice. The second deposition was necessitated by Mr. Shepard's unwillingness to answer certain questions which had to be certified. Mr. Shepard declined to answer those questions on the grounds and for the reasons that Plaintiffs would not waive their attorney-client privilege with Mr. Shepard. After the pre-trial conference which was held on December 9, 1981, counsel for Plaintiffs [Mr. Brady] persuaded his clients to waive the attorney-client privilege and the second deposition was therefore held. The attached Affidavit sets forth the costs of taking one of the depositions and would ask this Court to order that Plaintiffs bear the costs because their actions necessitated these duplicitous proceedings.

The trial court granted defendants' motion, finding that "the time and expense incurred by the Defendants ... was incurred as a result of Plaintiffs' unreasonable acts." When the defendants took Mr. Shepard's depositions, plaintiffs were alleging deceit and seeking approximately $400,000 in punitive damages. (Plaintiffs dropped the deceit count three days before trial.) When defendants apprised the court that plain-

2. SDCL 15–6–37(a) reads, in part: A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:

. . . .

(2) Motion. If a deponent fails to answer a question propounded or submitted under § 15–6–30 or § 15–6–31, or a corporation or other entity fails to make a designation under subdivision (6) of § 15–6–30(b) or § 15–6–31(a), or, a party fails to answer an interrogatory submitted under § 15–6–33, or if a party in response to a request for inspection submitted under § 15–6–34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. When taking a deposition on oral examination,

the proponent of the question may complete or adjourn the examination before he applies for an order.

If the court denies the motion in whole or in part, it may make such protective order as it would have been empowered to make on a motion made pursuant to § 15–6–26(c).

. . . .

(4) Award of expenses of motion. If a motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

. . . .

tiffs refused to waive the attorney-client privilege, the trial judge indicated he took a dim view of plaintiffs who seek high damages for fraud and breach of duty and then block discovery of a key witness.

When called as a defense witness, Mr. Shepard testified that he represented plaintiffs on the sale to Mr. Franz from late February 1977, through the curing of default on December 2, 1977. A trial court has broad discretion in imposing sanctions under SDCL 15–6–37(a). Wright & Miller, *Federal Practice & Procedure,* § 2284. In light of the issues pled and Mr. Shepard's intimate knowledge of the transaction, we do not believe the trial court abused its discretion in granting defendants' motion.

The judgment of the trial court is affirmed.

WOLLMAN, DUNN and MORGAN, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (specially concurring in part, dissenting in part).

Under the trial court's judgment, plaintiffs recover no damages either in contract or in tort.

It is rather basic that to recover under either a contract or tort theory, it is vital to establish that damages have been sustained. Under SDCL 21–2–1, *General measure of damages for breach of contract—Uncertain damages not recovered,* it is provided:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin.

Inasmuch as plaintiffs obtained the payments under the installment sale contract with Howard Franz and his subsequent as-

signee, albeit late, plaintiffs received the benefit of their bargain. Thus, they have sustained no ascertainable damage.

Under SDCL 21–3–1, *General measure of damages for breach of noncontractual obligation—Foreseeability not required,* it is further provided:

> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

Again, the damage to compensate for the alleged tort of fraud was not proven by plaintiffs as the plaintiffs received the payments due under the contractual instruments. Plaintiffs sued in deceit and fraudulent inducement of the contract. Proposed findings of fact and conclusions of law were submitted to the trial court but rejected. Remembering that the relationship between the broker and his client began in contract, client's counsel had pleadings also sounding in tort. This is not as unique or unrecognized as a reader might inceptionally believe. *See Mid-America Marketing v. Dakota Indus.,* 281 N.W.2d 419 (S.D.1979) (Dunn and Henderson, Justices, dissenting), *rev'd on rehearing,* 289 N.W.2d 797 (S.D.1980). *See also,* Prosser, *Law of Torts* § 92 (*Tort and Contract, Relation Between the Actions*) at 613–22 (4th ed. 1971).

I would found an affirmance of the trial court on the lack of damages proven. Plaintiffs must affirmatively show that they are aggrieved in that they have suffered a denial of some claim of right of either their persons or property. *Application of Northern States Power Co.,* 328 N.W.2d 852 (S.D.1983).

I specially concur to further express my view on a substantial question of law that exists in this case. When considering whether a brokerage commission paid to a person, corporation, or association lacking a required license may be recovered by the

seller due to the nonlicensure of the person, corporation, or association, legislative intent is the touchstone for determining the effect of the violation of the licensing statute. Each case turns upon the meaning of the words in each state's statute. Obviously, the entire purpose of the licensing statute should be considered. The holdings of the courts rest on varied grounds and take into consideration such factors as mistake of law, payment was voluntary and may not be recovered back, statute does not expressly permit recovery, statute is penal in nature, and equity does not require that the money be justly repaid. With no damages, and counsel for appellant in oral argument expressing that his clients had received full payment under the sale to date, plus the failure of this state's statute to provide for a recovery of a brokerage commission paid for nonlicensure, it strikes me that recovery for the commission paid is inapplicable to the facts at hand.

I dissent on the affirmance of the assessment of terms in the amount of $287.74 against plaintiffs. The trial court based this award upon "unreasonable acts." These "unreasonable acts" stem from the refusal of Attorney John H. Shepard of Sturgis, South Dakota, refusing to answer questions posed to him in a deposition on November 18, 1981. Attorney Shepard stated under oath that his clients had not entered a waiver of the attorney-client privilege. Hence, he could not testify to privileged matters. Attorney Shepard had the right to assert this privilege as protected under the provisions of SDCL 19–13–1, SDCL 19–13–2, and SDCL 19–13–3. Our statutory scheme in this state takes precedence over Wright and Miller, *Federal Practice and Procedure.*

As I understand the record, defendants scheduled the deposition with knowledge that the attorney-client privilege had not been waived. Thus, defendants either knew or should have known that Attorney Shepard was not in a position to testify to privileged matters between him and his clients. Later, another deposition was scheduled of Attorney Shepard and by this time the attorney-client privilege had been waived. Asserting the attorney-client privilege under the law can hardly be described as an unreasonable act.

I note that the trial court leaned on counsel in a motion hearing on or about December 9, 1981, to reassess counsel's position on the assertion of the attorney-client privilege. The trial court indicated that Attorney Shepard's testimony played a key role in the case and that extensive damages were being sought by plaintiffs. The trial court expressed the view that asserting this privilege was inappropriate. Thereafter, obviously fearful of the power of the trial court, the plaintiffs waived the attorney-client privilege with Attorney Shepard. This triggered a second deposition of Attorney Shepard on January 11, 1982. I fully appreciate that the trial court has broad discretion in assessing terms. But I deplore that a trial court can heavily lean on an attorney to such extent that he and his clients relent and waive the privilege, then to be further levied terms for exercising a sacred right and relationship in the law. One portion of the oath, SDCL 16–16–18, taken by all attorneys as they are sworn in to become a licensed practicing attorney in the State of South Dakota reads: "I will maintain the confidence and preserve inviolate the secrets of my client . . . ." SDCL 16–18–18 provides: "It is the duty of an attorney and counselor at law to maintain inviolate the confidence, and at any peril to himself to preserve the secret of his client." Therefore, I believe that the trial court abused its discretion by ordering terms to cover the costs of taking the second deposition of Attorney John Shepard. Obviously, Attorney Shepard had an intimate knowledge of his clients' affairs but that does not give the right to an aggressive trial court to insist that such attorney become a witness in the trial procedure, for if this type of rationale makes a waiver justifiable, indeed we shall find attorneys testifying in many cases about their clients' business which surely shall remove a cornerstone in the foundation of the American legal system.