#25119-r-DG

**2009 SD 95**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JAMES McGREGOR,                                    Plaintiff and Appellee,

  v.

CLINT CRUMLEY and
PAIGE CRUMLEY,                                    Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
HAND COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JON R. ERICKSON
Judge

* * * *

STEVE MILLER
Sioux Falls, South Dakota
and
ROGER R. GERLACH
Salem, South Dakota                     Attorneys for plaintiff
                                        and appellee.


RICHARD L. RUSSMAN of
Richardson, Wyly, Wise,
  Sauck & Hieb, LLP
Aberdeen, South Dakota                  Attorneys for defendants
                                        and appellants.

* * * *

                                        CONSIDERED ON BRIEFS
                                        ON AUGUST 24, 2009

                                        OPINION FILED **11/04/09**

#25119

GILBERTSON, Chief Justice

[¶1.] James McGregor sued Clint Crumley and Paige Crumley, husband and wife, for breach of contract for the sale and delivery of cows for a dairy operation. The Complaint alleged both Clint and Paige had entered into the contract and were jointly and severally liable. At the bench trial, McGregor submitted evidence of Clint's conduct in entering into and breaching the contract. No evidence was submitted as to any conduct by Paige as it pertained to entering into the contract or being a partner in the dairy operation. Paige's attorney, who also represented Clint, argued after McGregor rested that McGregor failed to prove Paige had entered into the contract. McGregor argued during his closing argument that Paige was a partner in the cattle business and liable for the contract as such. The trial court found for McGregor, who was directed to submit findings of fact and conclusions of law. Paige objected to the finding of fact that she was a partner in the dairy operation. The trial court overruled her objection and a final judgment was entered against both Clint and Paige. Paige appeals.

## FACTS

[¶2.] Clint and Paige lived on a dairy farm in Hand County, South Dakota, which Clint managed on a day-to-day basis. Paige, hired hands, and, on at least one occasion, Paige's mother and father also worked with the cattle. McGregor operated a dairy and feedlot as well as a cattle buying business out of Salem, South Dakota. McGregor and Clint became acquainted through Steve Wilke who provided dairy nutrition services to both men.

-1-

[¶3.]     In August 2007, McGregor showed Clint and Clint's father-in-law a herd of dairy cows while they toured McGregor's dairy and feedlot. A few days after the two men toured the operation, Clint telephoned McGregor and placed an order for a herd of dairy cows he saw on the tour. McGregor delivered the dairy cows to Clint's dairy farm. When McGregor delivered the cows, Paige handed McGregor a check for payment.[1] While at Clint's farm, McGregor observed Paige, Paige's mother and father, and two Hispanic farm hands, working with the dairy cows and on the farm.

[¶4.]     During the first half of September 2007, McGregor and Clint engaged in a series of telephone calls concerning the purchase of between twenty and thirty dairy cows for Clint's milking operation. The calls were exclusively between McGregor and Clint. On September 13, 2007, McGregor and Clint entered into an oral contract for the purchase of dairy cows.

[¶5.]     McGregor's agent delivered twenty-five dairy cows to Clint's milking operation and assisted Clint in unloading the cattle. No evidence was presented at trial that Paige was present at the time of delivery. The bill of lading prepared by McGregor's bookkeeper and entered as Exhibit 3 at trial listed the purchasers as Clint and Paige Crumley. McGregor's agent gave the bill of lading to Clint.

[¶6.]     Clint contacted McGregor a few days later to complain about the condition of several of the dairy cows. McGregor sent a cattle truck to Clint's dairy

---

1.    The bill of lading for the August 2007 shipment was not entered into evidence at trial, and no testimony was offered as to how McGregor's bookkeeper entered the customer name on it.

farm and eight of the original twenty-five dairy cows were loaded and returned for credit against the bill. The second bill listed both Clint and Paige as the purchasers and was entered at trial as Exhibit 4. McGregor continued to attempt to collect the balance on the bill. Clint eventually offered to return the balance of the cattle via a letter from his attorney in an attempt to settle the suit filed by McGregor. McGregor refused the offer.

[¶7.] Trial on the matter was held on July 30, 2008. Clint and Paige were represented by the same attorney. Paige was not present at the trial, did not testify, and was not called as a witness by either McGregor or Clint.

[¶8.] McGregor testified at trial that he spoke with Clint several times concerning the outstanding bill. McGregor also testified that on one occasion he attempted to discuss the bill with Paige but was unable to get her to do so. McGregor testified that Clint became angry after finding out that McGregor had attempted to discuss the bill with Paige.

[¶9.] Clint testified at trial that he ran the dairy operation, and that he had gotten into the business on his own in March or April 2007 after moving to South Dakota from Georgia where he was in the dairy business and the poultry business. He further testified that Paige confronted him about the September 2007 purchase after McGregor tried to speak with her about the bill. Clint was not asked whether Paige was a partner in the operation with Clint. He testified that Paige handled the family's finances.

[¶10.] Clint also testified that, in the fall of 2007, he had signed over all the assets of the dairy farm to his father-in-law to avoid losing the farm. The financial

arrangement also required Clint to sign over his share of a family poultry operation he had owned in Georgia before moving to South Dakota. Clint testified that Paige was a partner in her father's dairy operation. He also testified that, after the transfer of the dairy operation's assets to his father-in-law, both he and Paige milked the dairy cows he had previously owned and were paid a bi-weekly salary of $1,000.00 by his father-in-law's limited liability company that assumed ownership of the operation. On cross-examination concerning the dairy farm after it was transferred to Clint's father-in-law, Clint testified as follows:

> Q. So you said you don't know anything and you kind of do the labor work out there?
> A. I just manage the farm, yes, sir.
> Q. Do you get a portion of the milk check?
> A. My wife and I get a thousand every two weeks for living expenses.
> Q. So your father-in-law is paying you and your wife a thousand every two weeks?
> A. Basically, yes, she's -- my wife is getting our check basically.
> Q. So you don't get any money?
> A. To just – no, no. I mean if I get some gas in the, some gas in the truck.
> Q. Why is all the money being paid to your wife?
> A. Just because she handles our finances. She's actually a partner in the dairy.
> Q. And you are a partner in it too?
> A. No.
> Q. No?
> A. No.

[¶11.] McGregor did not ask questions concerning the business structure of Clint's dairy operation, or whether Paige was a partner in the business at the time of the cattle sale. Clint did not offer any evidence of the business structure of the operation. No financial statements, tax returns, or business formation documents were admitted at trial.

[¶12.] In his closing argument, Clint noted that McGregor had failed to prove Paige was a party to the contract in that she had not spoken with McGregor or done anything to indicate she had entered into the contract. McGregor argued that Clint had indicated that Paige was a partner in the dairy operation, and therefore, she was liable under the contract. The trial court found for McGregor from the bench on the existence of a contract but did not address Paige's liability. The trial court directed McGregor to prepare findings of fact and conclusions of law.

[¶13.] McGregor submitted findings of fact and conclusions of law. Clint and Paige objected to finding of fact number ten, which stated:

> 10. That Defendant, Clint Crumley, testified and stated that the milking operation was a joint partnership between himself and his wife and that all his dealings were on behalf of himself and his wife, which would include the transaction with Plaintiff, James McGregor.

Clint and Paige also objected to conclusion of law number eight, which stated:

> 8. That Defendant, Clint Crumley was a partner with his wife, Paige Crumley, and that a contractual arrangement by one partner was for the benefit of both partners.

The trial court, after reviewing the court file, noted the following:

> 1. Mr. and Mrs. Crumley were both named parties in the complaint.
> 2. Mr. and Mrs. Crumley both answered the complaint and did not raise this issue in the pleadings.
> 3. Mrs. Crumley did not appear at the time of the trial.
> 4. Exhibits 3 and 4, McGregor's Customer Order forms, note both Clint and Paige Crumley as the buyers of the cattle.
> 5. Mr. McGregor and Mr. Crumley testified that they had done business with each other on a prior occasion.

The trial court then noted that this evidence indicated that McGregor thought he was doing business with both parties. It further stated that neither Clint nor Paige

raised the issue in any of the pre-trial proceedings. Finally, the trial court noted that "McGregor's evidence of Mrs. Crumley's involvement is admittedly weak, however, in the opinion of this Court it is sufficient." The trial court overruled Clint and Paige's objections and signed McGregor's proposed findings of fact and conclusions of law. A judgment was entered against Clint and Paige, individually and severally, in the amount of $24,480.07.

[¶14.]     Paige appeals and raises one issue:

> Whether the trial court erred in determining that Paige was a party to the contract.

## STANDARD OF REVIEW

[¶15.]     Our well-settled standard requires this Court to review a circuit court's findings of fact under the "clearly erroneous" standard. *In re* Estate of Olson, 2008 SD 4, ¶8, 744 NW2d 555, 558. "A trial court's finding is clearly erroneous if, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been made." *In re* Estate of Pringle, 2008 SD 38, ¶18, 751 NW2d 277, 284. We resolve all conflicts in the evidence in favor of the trial court's determinations. *Id.* Questions of law are reviewed de novo with no deference given to the trial court. Adrian v. McKinnie, 2004 SD 84, ¶6, 684 NW2d 91, 94. "The circuit court's 'findings of fact must be supported by the evidence and conclusions of law must in turn be supported by the findings of fact.'" *In re* J.D.M.C., 2007 SD 97, ¶18, 739 NW2d 796, 803 (quoting *Adrian,* 2004 SD 84, ¶9, 684 NW2d at 95).

## ANALYSIS AND DECISION

[¶16.]     Paige argues on appeal that McGregor's Complaint did not allege she was a partner in the dairy operation, and that no evidence was presented at trial to

indicate the existence of a partnership between Clint and Paige. Paige further argues that the only theory McGregor advanced in his Complaint, and at trial, regarding contractual liability was based on a claim that the parties had entered into a contract and that it had been breached. All the evidence presented at trial, according to Paige's arguments, was in regard to Clint's conduct in entering into and breaching the contract. She further argues that the trial court's finding of fact number ten that Clint testified she and Clint were partners and that all his dealings were on behalf of he and Paige is contradicted by the record.

[¶17.] McGregor argues it was his understanding that Clint and Paige jointly ran the dairy operation. He does so based on the evidence that Paige handed him the check for the August cattle delivery, and that McGregor invoiced Clint and Paige jointly for the cattle in the original bill in September, Exhibit 3, and the amended bill, Exhibit 4, after the return of several of the cows. McGregor also argues that the letter sent by Clint and Paige's counsel in an attempt to settle the lawsuit prior to trial and their joint Answer and Counterclaim were an admission of their partnership status in the dairy operation. Finally, McGregor argues that Clint's testimony regarding whether Paige was a partner with Clint in the dairy operation or a partner with her father in his limited liability company that assumed the assets of Clint's dairy operation was ambiguous and must be resolved in favor of the successful party's version of the evidence. McGregor characterizes Clint's testimony and the Answer and Counterclaim as judicial admissions that Clint and Paige were operating a partnership.

[¶18.]    A partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit formed under § 48-7A-202, predecessor law, or comparable law of another jurisdiction[.]" SDCL 48-7A-101(6). A partnership is formed when two or more persons "carry on as co-owners a business for profit . . .[,] whether or not the persons intend to form a partnership." SDCL 48-7A-202(a). SDCL 48-7A-202 provides in relevant part:

> (c)    In determining whether a partnership is formed, the following rules apply:
>
>> (1)    Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the use of the property.
>>
>> (2)    The sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived.
>>
>> (3)    A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment:
>>
>>> (i)    Of a debt by installments or otherwise;
>>> (ii)    For services as an independent contractor or of wages or other compensation to an employee;
>>> (iii)    Of rent;
>>> (iv)    Of an annuity or other retirement or health benefit to a beneficiary, representative, or designee of a deceased or retired partner;

[¶19.]    A purported partner may be found jointly and severally liable for certain transactions under SDCL 48-7A-308, which provides in relevant part:

> (a)    If a person, by words or conduct, purports to be a partner, or consents to being represented by another as a partner,

in a partnership or with one or more persons not partners, the purported partner is liable to a person to whom the representation is made, if that person, relying on the representation, enters into a transaction with the actual or purported partnership. If the representation, either by the purported partner or by a person with the purported partner's consent, is made in a public manner, the purported partner is liable to a person who relies upon the purported partnership even if the purported partner is not aware of being held out as a partner to the claimant. If partnership liability results, the purported partner is liable with respect to that liability as if the purported partner were a partner. If no partnership liability results, the purported partner is liable with respect to that liability jointly and severally with any other person consenting to the representation.

(b)   If a person is thus represented to be a partner in an existing partnership, or with one or more persons not partners, the purported partner is an agent of persons consenting to the representation to bind them to the same extent and in the same manner as if the purported partner were a partner, with respect to persons who enter into transactions in reliance upon the representation. If all of the partners of the existing partnership consent to the representation, a partnership act or obligation results. If fewer than all of the partners of the existing partnership consent to the representation, the person acting and the partners consenting to the representation are jointly and severally liable.

(c)   A person is not liable as a partner merely because the person is named by another in a statement of partnership authority.

. . .

(e)   Except as otherwise provided in subsections (a) and (b), persons who are not partners as to each other are not liable as partners to other persons.

[¶20.]     The existence of a partnership is an issue of fact. Widdoss v. Donahue, 331 NW2d 831, 833 (SD 1986) (citing Weidner v. Lineback, 82 SD 8, 140 NW2d 597

(1966); Munce v. Munce, 77 SD 594, 96 NW2d 661 (1959)).[2] "Since there is no arbitrary test for determining the existence of a partnership, each case must be governed by its own peculiar facts and the existence of the relationship is a question for the trier of fact except in a case where the evidence is conclusive." *Insurance Agents*, 381 NW2d at 220 (citing *Munce*, 77 SD at 597, 96 NW2d at 663). "A finding of the existence of a partnership may be supported by evidence of the direct admission of the parties." *Snell*, 77 SD at 539, 95 NW2d at 456 (holding wife's admission to a third-party while in the presence of her husband that she and her husband were partners was sufficient to present a jury question as to the existence of a partnership and it was error for the trial court to direct a verdict in wife's favor on the issue). It may also be supported by evidence that the spouses shared profits from the business. *Insurance Agents, Inc.*, 381 NW2d at 219-20 (holding wife's conduct of depositing checks made out to husband's business in an account only in her name and writing checks for bills incurred by the business, along with the fact that wife received over $8,000 from the business and deposited it into her personal checking account, was evidence of a partnership).

---

2.     In prior cases, concern over whether the normal business affairs of a marriage rise to the level of a partnership has caused this Court to require a heightened burden of proof to establish such a partnership. *See* Insurance Agents, Inc. v. Zimmerman, 381 NW2d 218 (SD 1986); Snell v. Watts, 77 SD 534, 95 NW2d 453 (1959)). Strong evidence was required to prove a business partnership between a husband and a wife. *Insurance Agents*, 381 NW2d at 220 (citing *Snell*, 77 SD at 537, 95 NW2d at 455). Strong evidence was required "because it is not uncommon for a [spouse] to busy [his or] herself in the affairs of [the other spouse]. *Id*. Upon further review, we see no reason not to apply the normal burden of proof in this instance as we would in other factual situations concerning partnerships. As such, the "strong evidence" standard will no longer be followed by this Court.

[¶21.]     In the instant case, no evidence was presented at trial to show that Paige shared in the title to the dairy farm. There was also no evidence presented that she shared in the gross returns generated by the dairy operation, or that she had a common right in the cattle. There was no evidence presented that Paige shared in the profits of the business, that there were any profits to share, or that she was compensated as an employee for her labor on the dairy farm.

[¶22.]     Despite McGregor's contentions to the contrary, Clint made no admission at trial that Paige was a partner in the dairy operation. His testimony throughout the trial was that he had entered into the business on his own, that he was solely responsible for the debts incurred in the business, and that he made the decision to purchase the first herd from McGregor as well as the second herd over which the dispute occurred. Clint clearly testified that Paige was a partner with her father in his limited liability company that had assumed ownership of the dairy farm from Clint.

[¶23.]     McGregor's argument that Clint and Paige admitted their partnership status in the letter of offer to McGregor and in their Answer and Counterclaim is also without merit. While both documents state that Clint and Paige operated the dairy farm at the time the contract was formed, neither document indicates Clint and Paige were partners, the dairy farm was operated as a partnership, Clint and Paige shared the profits, or Paige had property rights in the cattle. The fact that Clint and Paige ran the dairy farm does not address the type of business entity under which they operated. As Clint testified at trial, he and Paige managed the dairy farm after its assets were transferred to Paige's father's limited liability

company. They did so as hired hands for which they were compensated at the bi-weekly rate of $1,000.00. Under McGregor's argument, Clint and Paige's daily joint efforts to care for and manage the cattle would suffice as evidence of a partnership between them to run the dairy farm even after its ownership was transferred to the limited liability company.

[¶24.] McGregor did not explore the type of business entity used by Clint at the time of the cattle sale during pre-trial discovery or at trial. McGregor assumed that because the husband and wife worked on the dairy farm together they were engaged in a partnership. However, the burden to show Clint and Paige were operating the dairy farm as a partnership was with McGregor in order to obtain a judgment against Paige for which she would be jointly and severably liable. *See* *Zimmerman*, 381 NW2d at 200.

[¶25.] The trial court noted that both Clint and Paige were named as defendants in the complaint, and that they never raised the issue that they were not operating a partnership. The complaint, however, never alleged the existence of a partnership. Clint and Paige were never on notice that McGregor would attempt to prove the existence of a partnership at trial. Moreover, McGregor did not attempt to prove Clint and Paige were operating a partnership. It was not until after Clint and Paige's attorney argued that no evidence had been presented to show Paige had entered into the contract that McGregor for the first time attempted to argue the existence of a partnership. Furthermore, McGregor offers

no authority for the proposition that sharing counsel is enough to show a partnership existed between Clint and Paige.[3]

[¶26.]    McGregor's testimony and Exhibits 3 and 4, the billing statements issued by McGregor, are likewise not conclusive evidence of the existence of a partnership between Clint and Paige.  There was no testimony at trial to suggest that McGregor's decision to invoice Clint and Paige for the cattle was anything more than an assumption on his part that the couple operated the dairy farm as a partnership.  There was no evidence Paige did or said anything to cause McGregor to place her name along with her husband's on the bill of lading for the August 2007 or the September 2007 cattle purchases.

[¶27.]    McGregor also did not offer any testimony concerning anything Paige did or said to suggest to McGregor that a partnership existed.  The only testimony he offered with regard to Paige's conduct was that she handed him a check for the first cattle order in August 2007, that she worked on the farm, and that she refused to discuss the bill for the second shipment of cattle.  None of these actions suggest Paige held herself out to McGregor as a partner in the dairy operation, or constitute a direct admission by Paige of a partnership.

[¶28.]    The trial court erred when it found the "admittedly weak" evidence was sufficient to establish the existence of a partnership between Clint and Paige given their status as husband and wife.  After a review of the entire record, we are

---

3.    A lawyer may represent more than one client as long as the provisions of the Rules of Professional Conduct, specifically Rule 1.7 with regard to concurrent conflicts of interest, are observed.  SDCL Rules of Prof. Conduct, App., Ch. 16-18 Rule 1.7.

left with a definite and firm conviction that a mistake was made. There was insufficient evidence to establish that a partnership existed between Clint and Paige with regard to the operation of the dairy farm, or that Paige did anything to indicate to McGregor that she was a partner in the dairy farm.

[¶29.]        Reversed.

[¶30.]        KONENKAMP, ZINTER, MEIERHENRY, and SEVERSON, Justices, concur.