**Richard E. DOUGHERTY, Plaintiff and Appellee,**

v.

**Patrick J. BECKMAN and Henry Carlson, d/b/a B & C Partnership, Defendants and Appellants.**

**Nos. 14018, 14026.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 28, 1983.

Decided April 25, 1984.

Rehearing Denied June 4, 1984.

John Burke, Sioux Falls, for plaintiff and appellee.

James E. McMahon of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendants and appellants.

BERNDT, Circuit Judge.

## CASE HISTORY

This action arose from a disagreement over the price of a townhouse constructed by defendants for plaintiff. Construction was completed May 3, 1981, and plaintiff tendered defendants $172,739 as full payment for the townhouse. Defendants returned the tender. Plaintiff filed a complaint on July 1, 1981, asking for a permanent injunction enjoining defendants from disposing of the townhouse except through a warranty deed to him during the pendency of the action. Plaintiff requested an order for specific performance ordering defendants to convey real property to plaintiff in exchange for $172,739. Defendants counterclaimed, asking that the contract between the parties be rescinded and that defendants be awarded interest on the money they had used to build the townhouse. In the alternative, defendants asked that plaintiff be required to pay $202,195.93, plus interest thereon from April 17, 1981, if the court granted specific performance.

After trial, the court decided that plaintiff should be allowed to complete the purchase of the townhouse for a total of $196,-400. It found that plaintiff paid a total of $28,400 and tendered an additional amount of $144,339, totaling $172,739. The court found that the tender was refused and the money returned to plaintiff on June 12, 1981. The trial court held that this tender stopped the interest on this amount from June 12, 1981, but that interest on the difference of $23,661 should be paid from June 12, 1981, to the date of final payment, and that total payment would be a condition precedent to the requirement of specific performance. The court also provided that failure to make the required payment within a specified time would constitute a forfeiture and would terminate any interest plaintiff had under the contract, or otherwise.

After the trial plaintiff paid to defendants $200,995, which was the Court's purchase price of $196,400, plus interest on $23,661 of the purchase price from June 12, 1981, to date of payment. The defendants conveyed the property to plaintiff. Defendants then filed a notice of appeal and plaintiff filed a notice of review. The de-

fendants appealed only the issue of whether the trial court erred in denying them recovery of pre-judgment interest on $172,739. Plaintiff's notice of review asked the Court to review the purchase price set by the trial court for specific performance.

### FACTS

In a contract executed in 1977 with plaintiff, defendants agreed to construct a townhouse in Sioux Falls, South Dakota, "to be finished, according to specifications and plans, designated as Plan No. 9–19." The purchase price agreed upon was $142,000. The contract states that no extras are included in the contract price unless they are set forth in the contract. The only extras to be included in the townhouse plaintiff contracted for, were set forth in an Addendum to the contract.

Two years later plaintiff hired architect Ward Whitwam to incorporate changes he wished to make to the original floor plan. In January, 1980, Whitwam made additional changes in the floor plan of the townhouse. These revisions included major structural changes, such as adding an additional 12 percent in interior wall partitions, requiring double framing in some areas, adding an additional 112 square feet of living area, finishing off the entire basement area, adding additional windows and, finally, adding additional sliding doors.

Defendants were not willing to construct the townhouse with these major revisions for the price stated in the original contract. Defendant Carlson, therefore, wrote a letter to plaintiff on February 27, 1980 (the February 27th letter), telling plaintiff that they would construct the townhouse according to the revised plans and information they had as of that date for $180,000. In the alternative, defendant Carlson told plaintiff that defendants would be willing to return plaintiff's deposit and pay the architectural fees he had incurred.

Pursuant to defendant Carlson's letter, a meeting was held at attorney John Burke's office. The purpose of the meeting was to discuss defendant Carlson's letter of February 27, 1980. Plaintiff apparently agreed to accept the terms of the February 27th letter. Defendant Beckman noted this acceptance on the bottom of his copy of defendant Carlson's letter.

Plaintiff made even more revisions to the floor plan for the townhouse on July 25, 1980, and October 14, 1980. In addition, plaintiff, or his wife, requested that numerous extras be added to the townhouse. All of these items were included in the townhouse when it was completed and ready for occupancy April 17, 1981. Several dates for finalizing the transfer of the property were set and cancelled by plaintiff for one reason or another. Defendant Beckman and plaintiff finally met on May 3, 1981, to close the transaction. Plaintiff refused to pay the $202,195.93 demanded by defendants for the completed townhouse but, instead, offered defendants $172,739 as full payment. Plaintiff's offer was refused and all the money he had paid to defendants was returned to him on June 12, 1981.

### DISCUSSION

The two issues requiring resolution are:
(1) The price of the townhouse
(2) The award of pre-judgment interest

*The Price of the Townhouse*

Plaintiff's brief concedes that the central issue in the case is the amount owed by plaintiff to defendants for the construction work. The major dispute is whether the $142,000 figure delineated in the contract is binding or whether the $162,500 sum, as quoted in the February 27th letter, controls this case. The trial court held that the latter sum was correct.

The contract provides guidance. The pivotal language is:

Which property the undersigned, as agent for the owner, has this day sold to the buyer for the sum of $142,000 ...
Included in the above price are the following extras: (none, if not set forth) $142,000 will be the ceiling price of the home. If selling price comparable to # 9 floor plan is less—the price will be adjusted accordingly. Any minor changes

will be included in the price of home—but large structural changes could effect [sic] the price of the home.

■ After defendants began construction, plaintiff insisted upon substantial revisions which greatly increased the cost of construction. Thereafter, defendants sent the February 27th letter advising that "[w]e are willing to complete your townhouse for the sum of $162,500 ...". Defendants contend that plaintiff adopted this letter and its $162,500 figure or, in the alternative, that the contractual caveat of "large structural changes ... effect[ing] [sic] the price" justifies not applying the $142,000 price. Under either the original contract or the February 27th letter, defendants appear entitled to the higher sum ($162,500). Considering first the contract, it is crucial that defendants included as part of the agreement that, along with a $142,000 price tag, "large structural changes could effect [sic] the price of the home." Whatever the full breadth of the phrase "large structural changes" may be, it would certainly seem to embrace the substantial revisions to the original floor plan plaintiff demanded. Plaintiff's consent to the contractual language now precludes any black letter reading of the $142,-000. Therefore, the trial court's decision to award the higher figure was correct.

■ Regardless of the contract, it appears that plaintiff adopted the February 27th letter (and its offer of $162,500). There is ample evidence in the record that plaintiff adopted the $162,500 price proposal. Further, defendants began construction of the townhouse *after this letter was received and acknowledged* by plaintiff. If plaintiff objected to the $162,500 price, he should have insisted that defendants cease construction. Absent such objection, plaintiff cannot now be heard that he did not consent to the higher figure. There-

fore, $162,500, as found by the trial court, is a proper base price.

■ The core dispute as to the amount due in this suit, surrounded the base price —$142,000 versus $162,500. The costs to finish the basement, as well as the extras, are not in dispute. Therefore, the trial court's award of $196,400 is justified. For this court to reverse the trial court's findings, this court must find that they were clearly erroneous. SDCL 15-6-52(a); *Reif v. Smith*, 319 N.W.2d 815 (S.D.1982). Upon review, the evidence and inferences therefrom must be viewed in a light most favorable to uphold the verdict and, if there is competent and substantial evidence to support the verdict, it must be upheld.*

### Pre-Judgment Interest

A related issue is the amount now due the defendants for pre-judgment interest. The empowering statute for pre-judgment interest is SDCL 21-1-11, which provides:

> Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

In *Beka v. Lithium Corp. of America*, 77 S.D. 370, 92 N.W.2d 156, 159 (1958), we interpreted this statute and held:

> The mere fact that the claim is disputed does not defeat the allowance of interest. *Corcoran v. Halloran*, 20 S.D. 384, 107 N.W. 210. As applied to this case our statute was construed by this court in *Gearhart v. Hyde*, 39 S.D. 273, 164 N.W. 58. The rule announced in that case is that interest is allowable on damages if there exists established or reasonably as-

---

* We reached this issue by considering plaintiff's notice of review. Defendants argue that plaintiff waived his right to appeal the issue by paying defendants $200,995, pursuant to the trial court judgment. We disagree. Voluntary acceptance of the benefits of a judgment waives the right to review only in those cases where the

review could lead to a denial or reduction of such benefits. *Siedenburg v. Sommerfeld*, 77 S.D. 191, 90 N.W.2d 77 (1958). Had this court agreed with plaintiff's contention, however, the price of the townhouse would have decreased and his benefit would have thereby increased.

certainable market prices or values of the subject matter by reference to which the amount due may be determined by computation.

See also *Northwestern Engineering Co. v. Thunderbolt Enterprises, Inc.*, 301 N.W.2d 421 (S.D.1981).

The trial court held that the amount of $196,400 that plaintiff owed defendants for construction of the townhouse was capable of being made certain by calculation. The court, however, awarded defendants pre-judgment interest on $23,661, the difference between the $196,400 and plaintiff's tender of $172,739. The court held that plaintiff's tender of $172,739 stopped pre-judgment interest from accruing on that amount, on the basis of SDCL 20–5–18, which provides:

> An offer of payment or other performance, duly made, though the title to the thing offered be not transferred to the creditor, stops the running of interest on the obligation, and has the same effect upon all the incidents as a performance thereof.

■ Defendants contend that plaintiff's tender of $172,739 was insufficient to toll the interest period. We agree.

Defendants demanded $202,195.93 as final payment for the townhouse. On May 3, 1981, plaintiff tendered $172,739 as *final payment*. Defendants articulated their objection to the tender and returned this money to plaintiff on June 12, 1981.

Plaintiff's tender of $172,739 as full payment, like the conditional tenders in *Pittsburg Plate Glass Co. v. Leary*, 25 S.D. 256, 126 N.W. 271 (1910) and *American Federal Savings & Loan Assoc. v. Mid-America Service Corp.*, 329 N.W.2d 124 (S.D.1983), was insufficient to discharge him from liability for prejudgment interest on the full amount of the judgment:

> Under the common law every tender made, in order to defeat the running of interest or to effect the incidents to the main obligation, had to be unconditional. This has been changed so that the party tendering payment has a right to insist upon a written receipt of the amount paid or (if under the law he is entitled to any other instrument of discharge, such as a discharge of lien) he is entitled to receive a written discharge to the extent of the amount paid; and in this case, if the sum tendered had been tendered without any conditions whatever, the lien would have been destroyed (if it had been tendered with the condition only that plaintiff deliver a satisfaction of said lien in the sum of the amount tendered, such lien would have been destroyed). But under the Civil Code the party has no right, any more than he would have had under the common law, when tendering a payment, to require a receipt in full or a satisfaction in full of the lien, or, in other words, when one party is honestly claiming a greater amount to be due than the other party concedes, he cannot be put in position of running the risk of losing his lien, not only upon the disputed claim, but also upon the undisputed part, by failing to receive the smaller amount in full; but he has the right to test the validity of his further claim, and the condition attached to the tender must be such as to leave him free to contest such right.

*Pittsburgh Plate Glass* at 126 N.W. 274–75; *American Federal Savings* at 329 N.W.2d 127.

The trial court's award of $196,400 for the townhouse is affirmed. This amount was capable of being made certain by calculation on June 12, 1981, and the trial court erred in not allowing prejudgment interest on the full amount. We remand for determination of the additional interest from June 12, 1981, through the date of payment and entry of judgment against plaintiffs in this amount.

The judgment is affirmed in part, reversed in part, and remanded.

FOSHEIM, C.J., and WOLLMAN and HENDERSON, JJ., concur.

MORGAN, J., concurs in part and dissents in part.

BERNDT, Circuit Judge, sitting for DUNN, J., disqualified.

MORGAN, Justice (concurring in part, dissenting in part).

I concur with the majority's disposition of the first issue, the purchase price of the townhouse; I dissent, however, on the prejudgment interest issue.

Whether prejudgment interest under SDCL 21–1–11 is appropriate is not in issue. The issue is limited to whether the trial court erroneously limited the amount of interest allowed because of a tender. The trial court relied on SDCL 20–5–18, quoted in the majority opinion. The trial court arrived at the following findings of fact and conclusions of law on this issue.

On May 26, 1981, defendant Beckman informed plaintiff that the total amount due for the townhouse was $202,195.93. Plaintiff, at that time, tendered a total payment of $172,839 to defendant Beckman as complete payment for the townhouse.

Pursuant to the contract, plaintiff paid a total of $28,400 and tendered an additional amount of $144,339 (totalling $172,-739).

This tender was refused and the entire $172,739 returned to plaintiff on June 12, 1981.

SDCL 20–5–18 stops the running of interest on this amount from June 12, 1981.

As the Eighth Circuit Court of Appeals stated in *Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287, 1291 (8th Cir.1980):

The South Dakota Supreme Court has had little opportunity to interpret section 20–5–18 and its predecessors.... In order to stop the accruing of interest, a tender must be an "unconditional tender" which effectively deprives the stakeholder of dominion over the fund. (Citations omitted.)

It is noteworthy that the trial court did not find that the tender was conditioned in any manner. Indeed, the record does not disclose any evidence of a condition and the case is therefore clearly distinguishable from the cases so heavily relied upon by the majority.

In *Pittsburgh Plate Glass v. Leary*, 25 S.D. 256, 126 N.W. 271 (1910), the amount tendered was a sum equal to the value of the panes of glass that arrived unbroken, whereas creditor's lien claim included the value of a broken pane. The tender of payment was, however, conditioned upon the delivery of a lien waiver. In *American Fed. Sav. v. Mid-America Service*, 329 N.W.2d 124 (S.D.1983), the tender was in an amount due on the notes and mortgage, *less the prepayment penalty* claimed due by the creditor. The tender was conditioned on delivery of a satisfaction of the mortgage. In *Eberle v. McKeown*, 83 S.D. 345, 159 N.W.2d 391 (1968), the amount tendered was for farm land rental plus the landlord's share of government price support payment, which latter sum was in dispute. The tendered check, however, bore notations that acceptance was "in full settlement for 1965 rent." The fact that Dougherty's tender of the $144,339 check was characterized in the trial court's findings as a *final payment* or a *total payment* is immaterial to the application of the statute since it was *unconditional*. In *Bauer, supra* at 1292 (citations omitted), the Eighth Circuit noted that:

Courts have recognized that an actual deposit of or an unconditional offer to deposit the interpleader fund serves at least two purposes:

(1) it protects the claimants from the risk that the stakeholder or its surety will become insolvent ...; and (2) it prevents the stakeholder, who has no claim to the fund, from using the fund for his benefit and, thus, becoming unjustly enriched at the expense of the claimants who have a colorable interest in the fund[.]

The unconditional tender herein left defendants free to deposit the $144,339 check in the same manner as the $28,400 check had been deposited. Acceptance of the tender would not have precluded suit for the balance claimed due under the contract.

Let us take note that this was not a suit on a lease agreement or promissory note where the stipulated rental or the principal

sum and interest rate were clearly set out. This lawsuit is on a contract which was revised so often that neither party's claim as to the amount due agreed with the trial court's final determination. As I read the majority opinion, the only way a debtor can make a successful tender when the sum owed is disputed, is to tender the full amount of the creditor's demand. If this is true, why did the courts in *Pittsburgh Plate Glass, supra, American Fed. Sav., supra,* and *Eberle, supra,* wherein the various amounts tendered were less than the amounts creditors claimed, agonize over the issue of conditional tender. It would have been much easier to simply hold that because the tender was less than the amount claimed, it was insufficient to stop the running of prejudgment interest.

Looking at the issue in the cold light of reality, a creditor would rarely bring suit against a debtor who tendered the amount the creditor claimed due.* The impact of the decision therefore is to require the debtor to settle on a creditor's term at peril of paying prejudgment interest on the entire sum. The import of the statute, on the other hand, is to permit the debtor to pay such amount as he concedes is due, leaving the parties to litigate only that which is in issue, the balance due, if any. Clearly the opinion emasculates the statute.

I would affirm the judgment of the trial court on both issues.

* In *Smith v. Widmann Hotel,* 74 S.D. 118, 49 N.W.2d 301 (1951), it is obvious that the lawsuit was centered on breaking a lease on a building and that the tender of rentals during holdover was merely an ancillary issue.