2005 SD 56

**James F. ANDERSON and Dorothy Anderson, Plaintiffs and Appellees,**

**v.**

**David AESOPH, Defendant,**

**and**

**Robert Aesoph, Intervenor and Appellant.**

**Nos. 23338, 23352.**

Supreme Court of South Dakota.

Considered on Briefs March 21, 2005.

Decided May 4, 2005.

Wally Eklund of Johnson Eklund Law Office, Gregory, SD, for plaintiffs and appellees.

Drew C. Johnson, Aberdeen, SD, for intervenor and appellant.

GILBERTSON, Chief Justice.

[¶ 1.] James Anderson and Dorothy Anderson (Andersons) sold 1,040 acres of farmland to David Aesoph (David) under a contract for deed. Andersons refused two requests seeking their approval for Robert Aesoph (Robert) to assume David's interest under the contract. David assigned his interest in the contract for deed to his brother Robert as partial payment for a personal debt without the written consent of Andersons as required by the contract. David eventually quitclaimed the land to Robert on November 8, 2000. Andersons accepted Robert's tender of David's 2000 year contract payment, but refused tender by Robert of the 2001 and 2002 payments. Andersons also refused Robert's November 28, 2001, offer of payment for the full balance due under the contract. Finally, Andersons filed suit against David on December 24, 2001, seeking cancellation and discharge of the contract for deed and forfeiture of the land, with all annual payments to be considered rent. Robert moved to intervene, and his motion was granted by the trial court. The trial court

held the contract was in default, but subject to foreclosure rather than forfeiture. Therefore, Robert had the right to comply with the terms of the foreclosure and redeem the contract for deed by paying the outstanding principal and interest. Robert eventually redeemed the contract. Robert appeals the calculation of interest and imposition of costs. Andersons appeal, contending the trial court erred when it allowed Robert to redeem the contract for deed under foreclosure.

[¶ 2.] Affirmed in part, and reversed and remanded in part.

## FACTS AND PROCEDURE

[¶ 3.] James Anderson and Dorothy Anderson (Andersons) entered into a contract for deed with David Aesoph (David) on October 16, 1998, for the sale of 1,040 acres of farmland located in Hyde County near Highmore, South Dakota. The contract contained the following provision restricting David's ability to assign the contract: "It is stipulated that the Buyer may not assign or sell interest in the said real property to any other person without the express written consent of the Sellers which consent shall not [be] unreasonably withheld."

[¶ 4.] The terms of the contract required David to make a $5,000 down payment on or before execution of the contract. The first payment of $45,000 was due on or before December 1, 1998. The remaining balance was to be financed at a rate of seven percent beginning January 1, 1999, with a payment of $25,000 due on or before June 1, 1999, and a second payment of $25,000 due on or before December 1, 1999. The remaining balance was to be paid in equal payments of $47,880.43, the first due on or before December 1, 2000, "and a like sum on or before December 1st of each of the succeeding five years which

payments shall constitute amortized principal and interest payments."

[¶ 5.] David made the down payment, the first $45,000 payment, and the two $25,000 payments due in 1999 as required under the terms of the contract. On November 18, 1999, David murdered his wife, was convicted by a jury on October 5, 2000, and sentenced to life in prison on November 8, 2000. *State v. Aesoph*, 2002 SD 71, 647 N.W.2d 743. During the course of the criminal proceedings, David borrowed $224,000 from his brother Robert Aesoph (Robert) for payment of farming operation debts and for other personal needs. Robert took mortgages on David's real estate, including David's interest in the contract for deed with Andersons.

[¶ 6.] On October 30, 2000, Robert's sons asked Andersons to consent to the assignment. Andersons declined to do so. Later that same day, David's lawyer requested consent from Andersons for Robert to assume the contract for deed. Again, Andersons declined to do so despite the provision in the assignment clause that "consent shall not [be] unreasonably withheld."

[¶ 7.] On November 8, 2000, the same day David was sentenced to life in prison, David quitclaimed his interest in the land under the contract for deed to Robert. The quitclaim deed was exchanged for $100,000, which Robert credited against the $224,000 debt David owned him. Robert filed the quitclaim deed the same day.

[¶ 8.] On December 1, 2000, Robert tendered David's 2000 payment to Andersons in the amount of $47,880.43 as required under the contract. Andersons accepted payment without knowledge of the assignment between David and Robert. Robert's tender of the 2001 payment was refused by Andersons.

[¶ 9.] In a letter dated November 28, 2001, Robert tendered payment in full for the balance due on the contract in return for a deed from Andersons. Andersons refused the tender. Finally, Robert tendered the December 2002 payment, and in the alternative the entire balance due plus interest, in a letter from his attorney dated October 10, 2002. Again, Andersons refused the tender of the 2002 annual payment and the tender of the full unpaid balance due under the contract for deed.

[¶ 10.] On November 15, 2001, Andersons filed a Notice of Default and Forfeiture against David. On December 24, 2001, Andersons commenced an action against David for cancellation and discharge of the contract for deed, seeking forfeiture and return of the property. The summons and complaint were twice served on David at the state penitentiary. David timely filed an answer on February 6, 2002. Robert moved to intervene. On May 1, 2002, the trial court entered an order allowing Robert to intervene.

[¶ 11.] On October 3, 2003, the trial court issued its first memorandum opinion and entered a judgment in favor of Andersons. The trial court held the contract for deed was in default once David violated the prohibition against sale. The trial court also concluded Andersons unreasonably withheld their consent to the assignment of the contract from Robert to David.[1] However, the trial court held the forfeiture clause in the contract was void and treated the matter as a foreclosure under SDCL 21-50-1. In its first memorandum opinion, the trial court held Robert had the right to comply with the terms of the foreclosure and redeem the property upon payment of the full unpaid balance and interest due within the time fixed by the trial court. The date by which Robert was required to redeem the contract was set as January 15, 2004. The trial court held SDCL 20-5-18, which provides that an offer of payment or other performance stops the running of interest on the obligation, did not apply in this case because the contract was in default at the time Robert made his offer.

[¶ 12.] The trial court issued a second memorandum on December 5, 2003, concerning the calculation of interest on the balance owing on the contract for deed. The trial court noted that Andersons were not aware of the assignment from David to Robert at the time they accepted the December 1, 2000 payment. The trial court deviated from its findings of fact, and stated that the provisions of SDCL 20-5-18 did not apply in this case as Robert failed to tender the full amount, instead tendering the annual payments. Therefore, the trial court held the running of interest did not stop. The trial court noted the run-

---

1. The trial court's October 3, 2003, memorandum opinion and its March 19, 2004, findings of fact and conclusions of law reviewed the three reasons proffered by Andersons for withholding consent to the assignment. First, Andersons contended they did not want to get into litigation fostered by David's murder of his wife and any subsequent claims of fraudulent conveyances. The trial court held the concern was unreasonable because continuing the contract for deed with David instead of consenting to the assignment to Robert would make litigation more likely rather than less likely. Next, Andersons argued they made the original contract with David and wanted to continue to deal with David. The trial court held this reason would be valid only if the proposed assignee, Robert, was not responsible. The trial court found Robert to be a good farmer and a long-standing member of the community, and therefore responsible. Finally, Andersons contended they were concerned about adverse tax consequences. The trial court found this proffered reason to be without merit and unreasonable grounds for withholding consent, as the tax consequences to Andersons would be the same whether they were dealing with David or Robert.

ning of interest would not stop until full compliance with the redemption terms. Finally, the trial court moved the redemption date back to March 15, 2004, given that it took more than 60 days to resolve the matter concerning the interest due.

[¶ 13.] In its findings of fact and conclusions of law dated March 19, 2004, the trial court again changed its position regarding Robert's tender of the full unpaid balance. The trial court noted that such a tender was made by Robert, but that it was not a valid tender because it was made after the contract was violated by the assignment from David to Robert and the contract was in default. The trial court calculated the interest due at seven percent per annum from December 1, 2000, the date of the last payment, until the final date of judgment and decree of March 19, 2004, as $45,196.54. It further calculated the daily interest at seven percent per annum after March 19, 2004, at $37.65 per day.

[¶ 14.] Robert tendered payment of a total of $241,898.50 to redeem the contract under the foreclosure order within the time frame set by the trial court. The amount included $196,306.54 of principal; interest from December 1, 2000 to March 15, 2004, in the amount of $45,327.98; and $263.98 in daily interest from March 19, 2004 to March 22, 2004, the date the final payment was tendered.

[¶ 15.] Andersons requested costs and attorney fees in the amount of $11,327.05. The trial court granted the amount per SDCL 21-50-4. Robert objected, contending Andersons prolonged the case with their unreasonable refusal to consent to the assignment, and their desire to litigate the case and seek forfeiture rather than foreclosure. The trial court awarded Andersons the full amount requested for costs and attorney fees. The trial court noted as the rationale for its decision that Andersons had the right to seek foreclosure and that Robert had the use of the land during the three years of litigation.

[¶ 16.] Robert appeals raising two issues for this Court's review. By notice of review, Andersons bring forward one issue for this Court's review. We address Andersons' issue before proceeding to Robert's issues, as it is a threshold issue that must be resolved first:

1. Whether the trial court erred when it allowed Robert Aesoph, a stranger to the contract, to assert rights of redemption under the contract.

2. Whether the trial court erred when it awarded interest on the balance due under the contract for deed after full payment on the contract had been tendered.

3. Whether the trial court erred when it awarded attorney fees and costs for the foreclosure litigation commenced after payment in full had been tendered on the contract for deed.

## STANDARD OF REVIEW

[¶ 17.] We review the trial court's findings of fact under the clearly erroneous standard. *Sherburn v. Patterson Farms, Inc.*, 1999 SD 47, ¶ 4, 593 N.W.2d 414, 416 (citing *Jasper v. Smith*, 540 N.W.2d 399, 401 (S.D.1995); *Muhlenkort v. Union County Land Trust*, 530 N.W.2d 658, 660 (S.D.1995)). "Clear error is shown only when, after a review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" *New Era Mining Co. v. Dakota Placers, Inc.*, 1999 SD 153, ¶ 7, 603 N.W.2d 202, 204 (citing *Rabenberg v. Rigney*, 1999 SD 71, ¶ 4, 597 N.W.2d 424, 425 (quoting *Cleveland v. Tinaglia*, 1998 SD 91, ¶ 16, 582 N.W.2d 720, 724)). "The trial court's findings of fact are presumed correct and we defer to those findings unless

the evidence clearly preponderates against them." *Lewis v. Moorhead*, 522 N.W.2d 1, 3 (S.D.1994) (citing *Cuka v. Jamesville Hutterian Mut. Soc.*, 294 N.W.2d 419, 421 (S.D.1980)).

[¶ 18.] We apply the abuse of discretion standard to a trial courts award of attorney fees. *Adrian v. McKinnie*, 2004 SD 84, ¶ 6, 684 N.W.2d 91, 94 (citing *Osgood v. Osgood*, 2004 SD 22, ¶ 9, 676 N.W.2d 145, 148). "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *In re South Dakota Microsoft Antitrust Litigation*, 2003 SD 19, ¶ 5, 657 N.W.2d 668, 671 (quoting *Black v. Class*, 1997 SD 22, ¶ 27, 560 N.W.2d 544). Under the abuse of discretion standard, "we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision." *Id.* (quoting *State v. Wilkins*, 536 N.W.2d 97, 99 (S.D. 1995)). When applying the standard, "we must be careful not to substitute our reasoning for that of the trial court." *Id.* (quoting *State v. Larson*, 512 N.W.2d 732, 736 (S.D.1994)).

### ANALYSIS AND DECISION

[¶ 19.] **1. Whether the trial court erred when it allowed Robert Aesoph, a stranger to the contract, to assert rights of redemption under the contract.**

[¶ 20.] Andersons contend David failed to transfer his rights under the contract for deed when he executed a quitclaim deed in Robert's favor. Andersons argue David's right to redeem the contract under foreclosure was not a right that transferred under the quitclaim, as David did not specifically state in the quitclaim deed, or any other document, that any and all interests held by David in the contract for deed transferred to Robert. Andersons also argue that David did not transfer legal title to the property in question under the quitclaim deed. Andersons cite as their authority several cases that stand for the proposition that a quitclaim deed transfers only the grantor's interest, if any, in the property rather than the property itself. *See North Dakota Workers Comp. Bureau v. Gen. Inv. Corp.*, 619 N.W.2d 863 (N.D.2000); *Gustafson v. Gustafson*, 239 Neb. 448, 476 N.W.2d 819 (1991); *Smith v. Berberich*, 168 Neb. 142, 95 N.W.2d 325 (1959); *Doelle v. Read*, 329 Mich. 655, 46 N.W.2d 422 (1951).

[¶ 21.] A contract for deed is, in its essence, a financing arrangement for the purchase of real property. *In re Butler*, 552 N.W.2d 226, 229 (Minn.1996). In a contract for deed, the installment vendor maintains "legal title to the property while the vendee holds equitable title and has the right to use and possession of the property." *First Fed. Sav. and Loan Ass'n of Storm Lake v. Lovett*, 318 N.W.2d 133, 135 (S.D.1982) (citing *State Highway Comm'n. v. Miller*, 83 S.D. 124, 155 N.W.2d 780 (1968); *Renner v. Crisman*, 80 S.D. 532, 127 N.W.2d 717 (1964); *Zent v. Zent*, 281 N.W.2d 41 (N.D.1979)). "[A]bsent an agreement to the contrary, a purchaser is free to transfer his rights under a contract for deed without the prior consent of the original vendor." *Bank of Toronto v. Lengkeek*, 436 N.W.2d 271, 275 (S.D.1989) (citations omitted).

[¶ 22.] Real property must be transferred either "by operation of law, or by an instrument in writing, subscribed by the party disposing of the same[.]" SDCL 43–25–1. A transfer of real property by an instrument in writing may be accomplished by quitclaim. SDCL 43–25–8. The form found at SDCL 43–25–7 is the usual procedure for conveying an interest in real

32

property by quitclaim. *Schroeder v. Herbert C. Coe Trust*, 437 N.W.2d 178, 184 (S.D.1989). We have previously held that a transfer of property by quitclaim serves to transfer *all* legal interests of the buyer to the assignee. *MHW Ltd. Family P'ship v. Farrokhi*, 2005 SD 21, ¶ 5, 693 N.W.2d 66, 67 (citing BLACK'S LAW DICTIONARY 424 (7th ed. 1999)).

▮▮▮ [¶ 23.] In the instant case, David had an equitable interest in the 1,040 acres of land under the contract for deed. David's rights included the right to use and possession of the land. David's right to use and possession, and by implication his right to transfer the property and any right to redeem the contract upon default, were also capable of transfer. The transfer of rights was subject only to the terms and conditions of the contract for deed David entered into with the Andersons.

▮▮▮ [¶ 24.] Andersons attempted to advance the argument at trial that David, as the original buyer, had no right to redeem the contract upon default due to the forfeiture clause contained in the contract for deed. The forfeiture clause provided in relevant part:

In the event of the failure of Buyer to make either the payments or the interest thereon or any part thereof, or fail to perform any of the covenants on his part made and entered into, then the whole of said payments and interest shall become immediately due and payable and the Contract shall, at the option of the Sellers, be forfeited and determined and the Buyer shall pay as rent, all payment made by him on this Contract, and all his right, title, and interest and all other improvements shall be retained by the Sellers in full liquidation and satisfaction of all damages by them sustained and they shall have the right to re-enter and take possession of the premises without hindrance or delay. It is mutually understood and agreed that 30 days is a reasonable and sufficient notice to be given to the Buyer in case of his default and shall be sufficient to cancel all obligations of the Sellers and to reinvest them with all right, title, and interest hereby agreed to be conveyed.

However, the trial court correctly held the forfeiture provision was invalid. The trial court noted this Court has previously invalidated a forfeiture clause almost identical to the one in the instant case.[2] *See*

2. The language of the forfeiture clause in *BankWest, N.A. v. Groseclose*, 535 N.W.2d 860, 864–865 (S.D.1995), provided:

In the case of the failure of the Purchasers to make any of the payments or any part thereof, or to perform any of the covenants on Purchaser's part hereby made and entered into, *then the whole of said payments shall become immediately due and payable* [FN3] and this contract shall, at the option of the Sellers, be forfeited and determined, and thereupon, Sellers shall be fully reinvested with all right, title and interest hereby agreed to be conveyed, and Purchasers shall forfeit all payments by Purchasers made on this contract and shall further forfeit all right, title and interest in and to all improvements located thereon, and such payments and improvements shall be re-

tained by Sellers in full satisfaction and in liquidation of all damages by Sellers sustained, and Sellers shall have the right to re-enter and take possession of the premises as aforesaid.

FN3. This emphasized language with the use of the mandatory term "shall," certainly indicates that upon the vendee's default the balance of the amount due and payable under the contract is immediately due. This provision clearly indicates that, even if Groseclose does not demand acceleration, the Buyers are entitled to tender the full balance in satisfaction of the contract. Even under the authority cited by Groseclose, Buyers had the right to prepayment of the contract balance. *See* discussion, infra, p[p]. 865–866.

*BankWest, N.A. v. Groseclose*, 535 N.W.2d 860, 864–865 (S.D.1995). More importantly, Andersons do not contend on appeal that David did not have the right to redeem the contract for deed upon default.

[¶ 25.] Andersons' argument that David failed to assign his right to redeem the contract upon default to Robert via the quitclaim deed is without merit. Andersons concede that David could not grant greater rights to Robert than those David had in the contract for deed. However, David effected a valid assignment to Robert of *all* his interests and rights under the contract for deed, including the right to redeem the contract upon default. Therefore, Robert, as the assignee of David's rights under the contract for deed, had the same right to redeem the contract for deed as did David.

[¶ 26.] **2. Whether the trial court erred when it awarded interest on the balance due under the contract for deed after full payment on the contract had been tendered.**

[¶ 27.] Prejudgment interest has as its purpose to compensate an injured party for the wrongful detention of money owed. *South Dakota Subsequent Injury Fund v. Homestake Mining Co.*, 1999 SD 159, ¶ 9, 603 N.W.2d 527, 529 (citing *S.D. Bldg. Auth. v. Geiger–Berger Assoc.*, 414 N.W.2d 15, 19 (S.D.1987) (citing *Bunkers v. Guernsey*, 41 S.D. 381, 170 N.W. 632 (1919))). SDCL 20–5–18 provides:

> An offer of payment or other performance, duly made, though the title to the thing offered be not transferred to the creditor, stops the running of interest on the obligation, and has the same effect upon all its incidents as a performance thereof.

In the context of a contract for deed, interest on the debt will stop running when the buyer tenders an unconditional offer of payment. *Adrian*, 2004 SD 84, ¶ 14, 684 N.W.2d at 98 (citing *Schmidt v. Iowa Beef Processors, Inc.*, 347 N.W.2d 897, 898 (S.D. 1984)). The seller's choice to dispute the validity of the buyer's right to pay off the balance of the mortgage does not entitle the seller to receive interest after the time the seller rejects the buyer's tender. *Id.* ¶ 17, 684 N.W.2d at 99.

[¶ 28.] Only an unconditional tender of payment sufficient to discharge the liability will toll interest under SDCL 20–5–18. *Id.*, ¶ 15, 684 N.W.2d at 98 (citing *Dougherty v. Beckman*, 347 N.W.2d 587, 591 (S.D.1984)). An offer is unconditional when the amount offered is sufficient to discharge the liability and the payment does not demand something in addition to, or outside of the original agreement. *Id.* ¶ 14, (citing *Schmidt*, 347 N.W.2d at 898). If tender of payment is accompanied by an additional requirement that is a common process for closing on real property, such as acquiring title insurance, the additional requirement is not an additional condition within the meaning of our prior opinions. *Id.* Therefore, in the context of a purchase of real property, the requirement that seller deliver title free and clear is not an additional condition when the original agreement called for the delivery of a warranty title upon satisfaction of the debt. *Estate of Fisher v. Fisher*, 2002 SD 62, ¶ 28, 645 N.W.2d 841, 849.

[¶ 29.] In the instant case, in a letter dated November 28, 2001, Robert tendered payment of the full contract price. Robert's offer was conditioned on receiving full and clear title. As such, Robert's tender was unconditional for purposes of SDCL 20–5–18. Robert's tender of payment occurred after Andersons' filed Notice of Default and Forfeiture against David on November 15, 2001, but before Andersons began the action by serving the

Summons and Complaint on David on December 24, 2001. Therefore, the contract for deed was in default at the time of Robert's tender. Acceptance of Robert's tender would have cured the default and made litigation unnecessary. The fact that Andersons elected to pursue a default and forfeiture action against David and dispute the validity of Robert's right to redeem the contract for deed upon default, does not entitle Andersons to prejudgment interest from the date of Robert's tender to the date of judgment.

[¶ 30.] The trial court correctly found Robert tendered full payment on the balance due under the contract for deed in its findings of fact dated March 19, 2004. However, the trial court erred in its finding of fact when it stated that the tender was not valid as it was made after the contract was violated by the assignment between David and Robert. The contract was in default as a result, but Robert's right to redeem the contract was unaffected and still available to him. The trial court then held prejudgment interest was due from the date of the last payment made on December 1, 2000, until the date of judgment and decree of March 19, 2004.

[¶ 31.] The trial court relied on our holding in *Dougherty v. Beckman*, 347 N.W.2d at 591, for the proposition that a "vendor is not required to waive a lien, a default, interest or other contract or legal rights simply because the vendee offers to pay what the vendee believes is payment of the contract in full." However, the trial court misapplied the holding in *Dougherty*. In that case, the buyer tendered $172,739, an amount less than the full price of $202,195.93 demanded by the builder as final payment for the construction of a townhouse. *Id.* The parties in *Dougherty* were in dispute as to the full price due to significant and numerous changes to the original construction project. *Id.* at 589.

We held the tender was not unconditional, as it required the builder to accept an amount less than it had demanded as final payment. *Id.* at 591. We held that the vendor "has the right to test the validity of his further claim, and the condition attached to the tender must be such as to leave him free to contest such right." *Id.* (citing *Pittsburg Plate Glass Co. v. Leary*, 25 S.D. 256, 126 N.W. 271, 274–75 (1910); *Am. Fed. Sav. and Loan Ass'n of Madison v. Mid–Am. Serv. Corp.*, 329 N.W.2d 124, 127 (S.D.1983)). If the vendor had accepted the vendee's payment as payment in full, vendor would not have been able to contest the disputed claim for the difference between the price tendered by vendee, and the price demanded by vendor. *Id.* For that reason, we held prejudgment interest did not toll upon the offer by vendee of an amount less than that demanded by the vendor. *Id.*

[¶ 32.] In the instant case there was no dispute as to the amount due under the contract for deed at the time of default, or at the time Andersons filed their Notice of Default and Forfeiture against David on November 15, 2001. The contract itself provided the amount of principal and interest due, which neither party contested. The only dispute was whether Robert had the right to redeem the contract for deed. Andersons' choice to dispute the validity of Robert's right to pay off the balance of the contract for deed did not entitle Andersons to receive interest after the time they rejected Robert's tender. *See Adrian*, 2004 SD 84, ¶ 17, 684 N.W.2d at 99.

[¶ 33.] The trial court did not have the benefit of our decision in *Adrian v. McKinnie*, 2004 SD 84, 684 N.W.2d 91, at the time of trial on the matter in 2003. In its conclusion of law, the trial court overestimated the amount of prejudgment interest due. Therefore, we reverse the trial court's award of prejudgment interest

from the date of the last payment on December 1, 2000, until the judgment date of March 19, 2004. We remand to the trial court for calculation of prejudgment interest from the date of the last payment made on December 1, 2000, until December 1, 2001, the date of Robert's tender of the full contract price as communicated to Andersons in the letter dated November 28, 2001.

[¶34.] **3. Whether the trial court erred when it awarded attorney fees and costs for the foreclosure litigation commenced after payment in full had been tendered on the contract for deed.**

[¶35.] Generally, attorney fees are awarded by contract or when authorized by statute. *Adrian*, 2004 SD 84, ¶19, 684 N.W.2d at 100 (citing *O'Connor v. King*, 479 N.W.2d 162, 166 (S.D. 1991)). Attorney fees in a foreclosure action may be awarded at the discretion of the trial court. SDCL 21–50–4. However, a vendor of real estate "should not receive attorney's fees for a foreclosure action created by his own refusal to accept tender." *Adrian*, 2004 SD 84, ¶20, 684 N.W.2d at 100.

[¶36.] Andersons twice unreasonably refused consent to the assignment of the contract for deed from David to Robert. Andersons then refused to accept Robert's tender of full and final payment on November 28, 2001. Instead, Andersons attempted to force forfeiture under the contract for deed and regain possession of the land. The trial court held the proper cause of action was that of foreclosure. However, it was the intransigency of Andersons that forced the matter to trial. At trial and on appeal, Andersons remained steadfast in their erroneous contention that Robert did not have the right to redeem the contract for deed upon default. They should not be rewarded for their actions by an award of attorney fees. The trial court did not have the benefit of our holding in *Adrian v. McKinnie*, 2004 SD 84, 684 N.W.2d 91, on the issue of attorney's fees. We therefore reverse the trial court, as Andersons were not entitled to attorney fees when Andersons themselves forced the matter into foreclosure by refusing Robert's unconditional and full tender of the contract price.

[¶37.] Affirmed in part, and reversed and remanded in part.

[¶38.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.